**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――――

ELIZABETH G.,

                             Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,        No. 8:21-CV-411
                                            (CFH)

                             Defendant.

―――――――――――――――――――――――――

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Schneider & Palcsik<br>57 Court Street<br>Plattsburgh, New York 12901<br>Attorney for plaintiff | MARK A. SCHNEIDER, ESQ. |
| Social Security Administration<br>J.F.K. Federal Building,<br>15 New Sudbury Street, Room 625<br>Boston, Massachusetts 02203<br>Attorney for defendant | LOUIS JOHN GEORGE, ESQ. |

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

      Elizabeth G.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying her applications for social security income and disability insurance benefits.

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 6.
[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff's last name by initial only.

See Dkt. No. 1 ("Compl.").  Plaintiff moves for reversal and remand for the determination of benefits.  See Dkt. No. 11.  The Commissioner cross moves for judgment on the pleadings.  See Dkt. No. 15.  For the following reasons, the Commissioner's decision is affirmed.

## I. Background

On June 20, 2019, plaintiff filed Title II and Title XVI applications for disability insurance and social security income benefits.  See T. at 12, 236-42.[3]  Plaintiff alleged a disability onset date of June 8, 2019.  See id. at 266.  The Social Security Administration ("SSA") denied plaintiff's claims on November 7, 2019.  See id. at 147-54.  Plaintiff sought reconsideration, see id. at 157, and her claims were again denied on January 21, 2020.  See id. at 159.  Plaintiff requested a hearing, see id. at 171, and a hearing was held on May 7, 2020, before Administrative Law Judge ("ALJ") Dale Black-Pennington.  See id. at 47-85.  On June 10, 2020, the ALJ issued an unfavorable decision.  See id. at 12-24.  The Appeals Council denied plaintiff's request for review on March 26, 2021.  See id. at 1-5.  Plaintiff timely commenced this action on April 12, 2021.  See Compl.

## II. Legal Standards

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  See Dkt. No. 10.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

**A. Standard of Review**

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . .  [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (internal quotations marks, citation, and emphasis omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which

significantly limits his [or her] physical or mental ability to do
basic work activities.

If the claimant suffers such an impairment, the third inquiry is
whether, based solely on medical evidence, the claimant has
an impairment which is listed in Appendix 1 of the
regulations.  If the claimant has such an impairment, the
[Commissioner] will consider him [or her] disabled without
considering vocational factors such as age, education, and
work experience; the [Commissioner] presumes that a
claimant who is afflicted with a "listed" impairment is unable
to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment,
the fourth inquiry is whether, despite the claimant's severe
impairment, he [or she] has the residual functional capacity
to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past
work, the [Commissioner] then determines whether there is
other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-

disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas,

540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each

of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998)

(citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden

shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful

employment somewhere.  Id. (citing Berry, 675 F.2d at 467).


### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined

that plaintiff had not engaged in substantial gainful activity since June 8, 2019, the

5

alleged onset date.  See T. at 14.  At step two, the ALJ found that plaintiff had the following severe impairments: "fibromyalgia, anxiety, posttraumatic stress disorder, migraine headaches, a Chiari I malformation, seizures, and eczema[.]"  Id.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id. at 15.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except

> [s]he can lift and/or carry up to twenty pounds occasionally and ten pounds frequently.  She is able to stand and/or walk six of eight hours and sit six of eight hours.  She must avoid concentrated exposure to noise and bright lights.  She is able to understand, remember, and apply simple and some complex instructions and directions.  She is able to perform simple and some complex tasks at a SVP level of approximately 1, 2, or 3.  She is able to have occasional interaction with coworkers and the public.  She is able to have frequent contact with supervisors.  She is able to use reason and/or judgment to make simple non-complex work-related decisions.  She is able to occasionally manage change to the workplace environment and/or tasks.

Id. at 17.  At step four, the ALJ determined that plaintiff was unable to perform past relevant work.  See id. at 22.  At step five, considering plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  See id. at 23.  Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act, from June 8, 2019, through the date of th[e] decision[.]"  Id.

## IV. Arguments[4]

Plaintiff argues that the ALJ erred in (1) weighing the medical opinions of record because the ALJ did not consider "the other important factors set forth" in 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); (2) determining that plaintiff's subjective complaints were inconsistent with the objective record; and (3) concluding that plaintiff's anxiety did not meet Listing 12.06.  Dkt. No. 11 at 17, 21-27.  The Commissioner argues that the ALJ's review of the medical opinions, and consistency and Listing determinations are supported by substantial evidence.  See Dkt. No. 15.

### A.  RFC Determination

### 1. Consideration of Plaintiff's Complaints of Pain

Plaintiff contends that "[t]here is compelling objective radiological and clinical evidence that [plaintiff's] well-documented headaches and fibromyalgia limit her exertional ability and causes her to suffer pain."  Dkt. No. 11 at 21.  Plaintiff argues that "the ALJ did not credit [plaintiff's] testimony of disabling pain.  In the instant Appeal, this Court should remand because the ALJ did not credit [plaintiff's] testimony about limitations caused her disabling headaches, objectively cause by her Chiari's Malformation[]" or her fibromyalgia.  Id. at 23.

"Under SSR 16-3p, . . . '[t]he ALJ must consider the entire case record, including objective medical evidence, a claimant's statements about the intensity, persistence, and limiting effects of symptoms, statements and information provided by medical sources, and any other relevant evidence in the claimant's record.'"  Kearney v. Berryhill, No. 1:16-CV-00652 (MAT), 2018 WL 5776422, at *6 (W.D.N.Y. Nov. 2, 2018)

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages' headers.

(alteration in original) (quoting <u>Vered v. Colvin</u>, No. 14-CV-4590 (KAM), 2017 WL 639245, at *15 (E.D.N.Y. Feb. 16, 2017)) (additional citation omitted).  The ALJ must "clearly demonstrate[] [that] he [or she] considered the entire case record . . . as required by SSR 16-3p." <u>Id.</u> Examining the record alongside a plaintiff's subjective allegations is complicated in cases with a fibromyalgia diagnosis because fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months."  SSR 12-2p, 2012 WL 3104869, at *2 (July 23, 2012).  "Indeed, claimants with fibromyalgia may experience severe and unremitting musculoskeletal pain, accompanied by stiffness and fatigue due to sleep disturbances, yet have normal physical examinations, e.g., full range of motion, no joint swelling, normal muscle strength and normal neurological reactions." <u>Harrison v. Comm'r of Soc. Sec.</u>, No. 18-CV-6715 (FPG), 2020 WL 607623, at *2 (W.D.N.Y. Feb. 7, 2020) (citation and internal quotation marks omitted).  As such, "the ALJ is not entitled to rely solely on objective evidence -- or lack thereof -- related to fibromyalgia, but must consider all relevant evidence, including the longitudinal treatment record." <u>Anysha M. v. Comm'r of Soc. Sec.</u>, No. 3:19-CV-0271 (CFH), 2020 WL 1955326, at *3, *5 (N.D.N.Y. Apr. 23, 2020) (affirming where the ALJ found the plaintiff's fibromyalgia to be severe, considered the Listing for inflammatory arthritis, and "[r]ather than improperly focusing on positive objective findings to discount [p]laintiff's allegations of fibromyalgia and related symptoms, the ALJ's decision indicate[d] [] careful consideration[.]"); <u>see also</u> <u>Jackeline R.R. v. Comm'r of Soc. Sec.</u>, No. 19-CV-00804 (JGW), 2021 WL 22507, at *4 (W.D.N.Y. Jan. 4, 2021) (determining that the ALJ committed no error where he found the plaintiff's fibromyalgia to be severe, "evaluated

[it] under [SSR] 12-2p[,]" "extensively discussed the characteristics of fibromyalgia[,]" and "objective findings on exam were also relatively normal and inconsistent with allegations of severe pain.").

### a. ALJ Decision

The ALJ determined that plaintiff's "fibromyalgia, anxiety, posttraumatic stress disorder, migraine headaches, a Chiari I malformation, seizures, and eczema" were severe impairments.  T. at 14.  In determining plaintiff's RFC, the ALJ found that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  Id. at 18.

The ALJ reviewed plaintiff's subjective complaints[5] and noted that she "alleged disability due to fibromyalgia, anxiety, posttraumatic stress disorder, migraine headaches, a Chiari malformation type I, seizures, and eczema."  T. at 17 (citing T. at 266).  The ALJ explained that plaintiff "alleged she could only lift up to ten pounds on good days.  She could stand only twenty minutes at a time before cramping.  She could sometimes walk without a problem, but other days she could barely walk due to sciatic pain.  She could not sit more than twenty minutes at a time."  Id. at 17-18.  The ALJ stated that plaintiff "further had difficulties with stairs, reaching, and using her hands.  She could not kneel or squat.  She always had pain and migraines.  Her pain was worst in her neck, back, and hips.  She had eczema on her hands, which was also painful."  Id. at 18.  Plaintiff "averaged one headache per week, with nausea, light sensitivity, and

---

[5] Plaintiff does not challenge the ALJ's consideration of plaintiff's subjective allegations as they relate to her mental health, therefore, the Court only reiterates the relevant portions of the ALJ's decision relating to plaintiff's physical limitations.  See Dkt. No. 11 at 21-24.

irritability.  Medication could help if she took it soon enough.  She also had three seizures in the past twelve months."  Id. (citing T. at 302-08).  As recounted by the ALJ, plaintiff "testified she could not work because her symptoms changed from day to day. She never knew when a migraine would be coming on.  She had them once per week, and they could last a day."  Id.  The ALJ stated that plaintiff "had pain in her neck, back, and feet due to fibromyalgia, and her hands hurt due to eczema.  Her neck and hands hurt daily. Her back hurt three times per week.  She did not have problems walking."  Id. Finally, "[w]hen standing, she needed to switch positions every thirty minutes to an hour. She could bend, stoop, and squat."  Id.

As to the objective record, the ALJ explained that plaintiff "saw her primary care provider in June 2019 for substance abuse.  The record noted a history of fibromyalgia and a Chiari malformation, but there was otherwise little discussion about these."  T. at 18 (citing T. at 722).  "A follow-up in July 2019 noted dyshidrotic eczema, as well, but there was again little attention paid.  An examination by her primary care provider in August 2019 merely noted [plaintiff] was in no acute distress."  Id. (citing T. at 718, 838). The ALJ noted that in September 2019, plaintiff "went to the emergency room complaining of painful cervical lymphadenopathy, but she otherwise had been feeling fine.  The record noted a history of migraines, fibromyalgia, and seizures.  An examination noted the tender lymph nodes, but it was otherwise unremarkable."  Id. (citing T. at 831-33).

The ALJ reviewed plaintiff's consultative examination from October 2019 wherein plaintiff "reported having two previous seizures, and she had migraines since she was twelve.  She had a migraine once or twice per month."  T. at 19.  The ALJ explained that

"[i]n the examination, she was in no acute distress.  Her gait was normal, and she walked on her heels and toes without difficulty.  Her stance was normal, and she could squat fully.  She could get on and off the examination table, and she could rise from a chair without difficulty."  Id.  Further, her "[s]trength was 5/5 in all four extremities, and sensation was intact.  Hand and finger dexterity were intact."  Id. (citing T. at 743-46).  The ALJ stated that "[t]his examination is inconsistent with the alleged severity of pain or headaches."  Id.

Plaintiff saw her primary care provider in November 2019 and, according to the ALJ, she "reported she was doing well but had a frontal headache for five days.  An examination noted she was in no acute distress.  In December 2019, [plaintiff] again complained of headaches, and that they had been going on for a month and a half.  She described them as different from migraines."  T. at 19.  "An examination noted she was in no acute distress.  She was advised to use nonsteroidal anti-inflammatories as needed[.]"  Id. (T. at 844-46, 848-50).  The ALJ explained that plaintiff attended a follow-up appointment in January 2020 where she "reported that her migraines were rare, although she had more frontal headaches.  An examination noted she was in no acute distress.  She was referred to neurology for headaches."  Id. (citing T. at 861-63).  The ALJ concluded that "[t]his evidence indicates that [plaintiff's] headaches had not been a long-term problem, and there was little to suggest the frequency or intensity alleged."  Id.  The ALJ then noted that at an appointment in March 2020, plaintiff reported a headache, that she was doing well, and that "[s]he and her husband had taken an eight-day vacation and went golfing.  An examination merely noted she was in no acute distress."  Id. (citing T. at 873-76).  The ALJ determined that "[t]hese activities, as well

11

as the lack of findings on examination, are inconsistent with the alleged severity of pain." Id.

Finally, when discussing the medical opinions of record, the ALJ explained that Dr. Figueroa's consultative examination was inconsistent "with the medical evidence, which did not suggest [plaintiff] had any flare-ups of her fibromyalgia during the relevant period." T. at 20.

### b. Analysis

To the extent plaintiff claims the ALJ erred in stating that plaintiff had no fibromyalgia flare-ups during the relevant period, she points to no records contradicting the ALJ's statement. See Dkt. No. 11 at 20, 23. Rather, she states that the ALJ's statement is "belied by the medical records. Her fibromyalgia was also diagnosed by treating physician, [Mary] Halloran[,M.D.]  The notes from neurologist [Paul] Penar, [M.D.,] also indicate that the fibromyalgia was diagnosed by a rheumatologist." Id. at 20. Further, plaintiff states, "[t]here is no evidence to support the ALJ's finding that she suffered no flare-ups during the period in questions. On February 12, 2020, for instance, Dr. Halloran diagnosed her with fibromyalgia and noted her *recurrent* pain at the fibromyalgia tender points." Id. at 23. The one record citation plaintiff provides is to Dr. Halloran's 2020 physical limitation medication source statement which notes that plaintiff had "[r]ecurrent pain at tender points." See T. at 916. Plaintiff does not identify a treatment record wherein she was noted to be having a fibromyalgia flare-up or any resulting symptoms during the relevant period. See Dkt. No. 11.

Further, plaintiff cites to Clawson v. Astrue to support the contention that the ALJ was required to appropriately credit plaintiff's "testimony about limitations caused her

disabling headaches, objectively caused by her Chiari's Malformation."  Dkt. No. 11 at

22-23 (citing No. 10-CV-377 (LEK/VEB), 2011 WL 4055403, at *2 (N.D.N.Y. July 27,

2011), report and recommendation adopted, 2011 WL 4055379 (N.D.N.Y. Sept. 12,

2011)).  In Clawson, the ALJ found that the plaintiff's severe impairments were his

"rotator cuff tendonitis, bursitis, and capsulitis-right shoulder and right hand numbness

of undetermined cause."  2011 WL 4055403, at *2.  Although the plaintiff's treating

physician assessed the plaintiff for Arnold-Chiari malformation, "[t]he ALJ focused on

the lack of a definitive diagnosis and/or clinical explanation for [the p]laintiff's pain."  Id.

at *5.  Thus, "[t]he ALJ concluded that [he p]laintiff retained the residual functional

capacity to perform the full range of light work[.]"  Id. at *3.  The Court remanded, in

part, because "[g]iven the medical evidence . . . supporting [the p]laintiff's claims of

disabling pain, the ALJ was obliged to re-contact the treating physician to obtain further

information concerning the impact of [the p]laintiff's pain on her functional abilities."  Id.

at *5.

　　　　Here, the ALJ found plaintiff's Chiari I malformation to be a severe impairment.

See T. at 14.  The ALJ concluded that plaintiff was capable of light work but  additionally

restricted her to lifting or carrying up to twenty pounds occasionally and ten pounds

frequently and standing, walking, or sitting for six out of eight hours.  See id. at 17.  The

ALJ also limited plaintiff to avoiding concentrated exposure to noise and bright lights.

See id.

　　　　Plaintiff identifies various medical records documenting plaintiff's diagnoses for

fibromyalgia and Chiari I, as well as her headaches.  See Dkt. No. 11 at 8-14.  The

records indicate that she had "a Chiari displacement which is greater than 5 mm, and

symptoms of headache which are consistent with a Chiari type."  T. at 362.  Plaintiff

reported "several years of headaches.  This began with migraines at the age of 12."  Id.

at 360.  Her Chiari displacement was later measured to be eight millimeters.  See id. at

357.  In Dr. Penar's assessment of plaintiff's Chiari displacement, he noted that plaintiff

"does appear to have normal spinal fluid pulsation and flow around the cerebellar tonsils

with a small amount of Chiari displacement, less than 10 mm. . . .  It was not my

recommendation to proceed with surgical decompression. . . .  She will keep us

informed about any further symptoms which could change over time."  Id. at 357-58.

Plaintiff reported that she had a headache for five days.  See id. at 848.  She also

informed Dr. Halloran that her headaches "bother[] her neck[.]"  Id. at 861.

However, plaintiff does not identify any record evidence indicating specific

functional limitations stemming from her impairments.  See Dkt No. 11.  In neither Dr.

Halloran's 2019 letter opinion or 2020 medical source statement did she mention

plaintiff's Chiari I malformation, headaches, or any resulting limitations.  See T. at 852,

916-20.  Further, plaintiff does not explain how the RFC should be more limited given

her fibromyalgia or Chiari I malformation.  See Morgan v. Saul, No. CV 19-5915 (AYS),

2021 WL 4551937, at *9 (E.D.N.Y. Oct. 5, 2021) ("A Social Security claimant ultimately

bears the burden to prove a more restrictive RFC than the RFC assessed by the ALJ.");

Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) ("[The plaintiff]

had a duty to prove a more restrictive RFC[.]").  Rather, plaintiff's consultative

examination noted no acute distress, a normal gait and stance, she could fully squat

and walk on her heels and toes, she did not need help changing, rising from a chair, or

getting on and off the exam table, she had full ranges of motion, her joints were not

14

tender, she had ten out of nineteen "fibromyalgia points" and her strength was "5/5 in the upper and lower extremities." T. at 744-45. Despite plaintiff's mostly normal physical examination, the ALJ incorporated exertional and non-exertional limitations in plaintiff's RFC to account for her severe fibromyalgia, headaches, Chiari I malformation, seizures and eczema—giving credence to plaintiff's diagnoses and reports of pain and persistent headaches that appeared throughout the record but determining that the evidence did not support the "frequency or intensity alleged." T. at 19; 17.

The ALJ also credited part of Dr. Halloran's 2020 physical-limitations opinion because it was "supported by a few noted findings, such as tender points[.]" T. at 20. The ALJ reviewed plaintiff's complaints of pain and limitations as reflected in her disability application, function report, and testimony indicating that plaintiff had migraines "once per week[,]" she had pain in her neck, back, feet, and hands, and she had to switch positions every thirty minutes to an hour and could not bend, stoop, or squat. See T. at 17-18, 60-63, 266, 302-308. The ALJ stated that plaintiff's record "noted a history of fibromyalgia and Chiari malformation, but there was otherwise little discussion of these." Id. at 18 (citing T. at 722). The ALJ also noted plaintiff's repeated complaints of headaches as reflected in her treatment notes. See id. at 19. Further, the ALJ relied on the state agency consultants' and Dr. Halloran's determinations as to plaintiff's ability to walk, stand, sit, and be around noise and light. See id. at 20.

As the ALJ reviewed the subjective and objective information in the record relating to plaintiff's fibromyalgia, Chiari I malformation, and headaches, and incorporated appropriate limitations, remand is not warranted on this ground. Cf. Darnise C. v. Comm'r of Soc. Sec., No. 1:20-CV-01842 (CJS), 2022 WL 896762, at *11

(W.D.N.Y. Mar. 28, 2022) ("[T]he Court does not agree that the ALJ relied on impermissible factors when evaluating [the p]laintiff's credibility.  The ALJ found that [the p]laintiff's fibromyalgia was a severe impairment.  However, . . . the fact that [the p]laintiff has fibromyalgia does not necessarily make her disabled; rather, the ALJ was required to evaluate the severity of symptoms and limitations.").

### 2. Review of Medical Opinions

Under the relevant regulations, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on their supportability and consistency, the author's relationship with the claimant and specialization, and "other factors."  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  Although the ALJ is not required to assign a specific "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions."  Id. §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The ALJ must expressly "explain how [he or she] considered the supportability and consistency factors" for all of the medical opinions in the record.  Id. §§ 404.1520c(b)(2), 416.920c(b)(2).  "[S]upportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  Id. §§ 404.1520c(c)(1), 416.920c(c)(1).  "[C]onsistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  Id.

§§ 404.1520c(c)(2), 416.920c(c)(2).  "If the ALJ fails adequately to explain the supportability and consistency factors, or bases [his or] her explanation upon a misreading of the record, remand is required."  Rivera v. Comm'r of the Soc. Sec. Admin., No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), report and recommendation adopted, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (citation and quotation marks omitted).  The ALJ is generally "not required to, explain how [he or she] considered the" remaining factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," he or she "will articulate how [he or she] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions . . . ."  Id. §§ 404.1520c(b)(3), 416.920c(b)(3).

### a. ALJ Decision

In determining plaintiff's RFC, the ALJ reviewed all of the medical opinions in the record.  See T. at 20-21.  The ALJ explained that "[s]tate agency medical consultants, J. Rosenthal, M.D., and S. Powell, M.D., provided prior administrative findings in October and December 2019, respectively, each stating that [plaintiff] could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk six hours," "sit for six hours[,]" and "had environmental limitations of avoiding concentrated exposure to noise."  T. at 20 (citing T. at 87-146).  The ALJ stated that "[a]lthough non-examining, these experts are well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act and Regulations.  Their findings were also well supported, providing a narrative explanation as well as significant references to the

record as needed."  Id.  The ALJ also found their opinions to be "consistent with the

objective medical evidence.  While the record noted the stated diagnoses, there was

little treatment and few complaints of pain during the relevant period.  The consultative

medical examination was fairly normal, as well.  For these reasons, their findings are

persuasive."  Id. (citing T. at 718, 722, 743-46, 831-33, 838, 844-46, 848-50, 861-64,

873-76).

       The ALJ next reviewed plaintiff's October 2019 physical consultative examination

conducted by Rita Figueroa, M.D., and noted that the opinion stated that plaintiff "would

have difficulty with activities of moderate exertion during fibromyalgia flare-ups, and she

should avoid a high noise level."  T. at 20 (citing T. at 746).  The ALJ found the opinion

to be "supported only by [plaintiff's] subjective complaints during the visit, not any

objective findings.  The opinion is not consistent with the medical evidence, which did

not suggest [plaintiff] had any flare-ups of her fibromyalgia during the relevant period.

For these reasons, this opinion is not persuasive."  Id. (citing T. at 718, 722, 7F, 743-46,

831-33, 838, 844-46, 848-50, 861-64, 873-76).

       Next, the ALJ addressed Dr. Halloran's physical-limitations opinion.  See T. at

20.  The ALJ explained that in a February[6] 2020 opinion, Dr. Halloran stated that

plaintiff's "fibromyalgia and substance abuse limited [her to] standing/walking about four

hours in a workday, with no limitations on sitting.  She could lift twenty pounds

occasionally and ten pounds frequently.  She was incapable of low stress work, and she

would be absent more than four days per month."  Id. (citing T. at 916-20).  The ALJ

found the opinion to be "supported by a few noted findings, such as tender points, but it

---

[6] As the Commissioner explains, the ALJ incorrectly stated that the opinion was from March 2020.  See
Dkt. No. 15 at 7, n.2; see also T. at 20, 920.

was also heavily reliant on [plaintiff's] substance abuse.  Dr. Halloran's own treatment records mostly noted treatment for substance abuse, not physical impairments."  Id. (citing T. at 836-51).  The ALJ explained that Dr. Halloran's "opinion [wa]s further inconsistent with the other medical evidence, such as the lack of findings on the consultative medical examination.  For these reasons, this opinion is only partially persuasive."  Id. at 20-21 (citing T. at 743-46).

As to plaintiff's mental limitations, the ALJ considered a December 2019 opinion from Dr. Halloran.  See T. at 21.  The ALJ stated that the 2019 opinion indicated that plaintiff's "anxiety made it very hard for her to be in public places and to work with other people."  Id. (citing T. at 852).[7]  The ALJ explained that Dr. Halloran "gave another opinion in March 2020, in a mostly checkbox form."  Id.  The ALJ recounted Dr. Halloran's determinations that plaintiff "had seriously limited abilities to complete a normal workday or workweek, deal with normal work stress, deal with the stress of semiskilled and skilled work, or interact with the public," and she would be miss more than four days of work per month, "but she would be able to understand, remember, and carry out detailed instructions."  Id. (citing T. at 910-15).  The ALJ noted that "Dr. Halloran is a primary care provider, not a specialist.  Dr. Halloran's December 2019 opinion is not well supported, as no objective findings were given.  Her opinion is further vague, without specific functional limitations."  Id.  The ALJ concluded that Dr. Halloran's "March 2020 opinion is better supported, checking boxes to indicate findings to support.  However, her opinion is fairly extreme, and significant findings would be

---

[7] This opinion is in the form of a letter written by Dr. Halloran explaining that she is plaintiff's primary care provider and that she "support[s plaintiff's] pursuit of disability because her extreme anxiety currently makes it very hard for her to be in public places and to work with other people.  I do think that overtime and with counseling she will be able to get off disability."  T. at 852.

expected.  Her opinion is further not supported by Dr. Halloran's own examinations of record, which generally noted few objective findings."  Id. (citing T. at 714-16, 722-25, 846, 848-50, 863, 873-76).  The ALJ determined that "[b]oth opinions are also inconsistent with the objective medical evidence, such as the consultative psychological examination."  Id. (citing T. at 739-42).  "For these reasons, this[8] opinion is not persuasive."  Id.

The ALJ also reviewed the determinations from state agency psychological consultants, M. Momot-Baker, Ph.D., and C. Walker, Ph.D.  See T. at 21.  The ALJ explained that each provided a determination in November and December 2019, respectively, and they determined that plaintiff's "mental impairments resulted in [a] mild limitation in understanding, remembering, or applying information, moderate limitation interacting with others, moderate difficulties in maintaining concentration, persistence, or pace, and moderate limitation in adapting or managing oneself."  Id.  The ALJ further recounted their findings that plaintiff "could understand, remember, and carry out detailed work procedures, could engage in superficial work interactions, and would have difficulty handling high stress or high demand work situations."  Id. (citing T. at 87-146).  The ALJ explained that "[a]lthough non-examining, these experts are well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act and Regulations.  Their findings were also well supported, providing a narrative explanation as well as significant references to the record as needed."  Id.  The ALJ concluded that "their findings are consistent with the objective medical

---

[8] Although the ALJ stated "this opinion" seemingly referring to only one, it would appear that the ALJ was referring to both the 2019 letter opinion and 2020 medical source statement in finding them both to be unpersuasive.  T. at 21.

evidence.  Examinations of record were generally unremarkable.  For these reasons, their findings are persuasive."  Id. (citing T. at 695, 714-16, 722-25, 739-40, 846, 848-50, 863, 873-76).

Finally, the ALJ reviewed Brett Hartman, Psy.D.'s consultative psychological examination.  See T. at 21.  The ALJ restated Dr. Hartman's findings that plaintiff "could understand, remember, and apply simple directions and would have mild difficulty with complex directions.  She had a moderate difficulty sustaining an ordinary routine, with moderate to marked difficulty using reason and judgment.  She also had moderate to marked difficulty regulating her emotions."  Id. (citing T. at 737-42).  The ALJ determined that the opinion was "not supported by his examination, which noted few findings except for an anxious mood.  [Plaintiff] was also cooperative.  There was little to support moderate to marked limitations in any area."  Id. (citing T. at 737-42).  The ALJ further explained that the opinion was "inconsistent with the medical evidence.  Examinations of record were generally unremarkable, and they would not be consistent with moderate to marked limitations in such areas.  For these reasons, his opinion is not persuasive."  Id. (citing T. at 695, 714-16, 722-25, 739-40, 846, 848-50, 863, 873-76).

The ALJ summarized that "[w]hile the record noted diagnoses of fibromyalgia, migraine headaches, a Chiari malformation, seizures, and eczema, there was no evidence of flare-ups during the period.  Physical examinations, including the consultative medical examination, were generally normal.  As for [plaintiff's] mental impairments, treating examinations generally showed few objective findings.  In all, the record as a whole supports the residual functional capacity []."  T. at 22.

**b. Analysis**

Plaintiff recites the relevant regulations for reviewing medical opinions and states that "[i]n the instant case, the ALJ erred by not giving consideration to the other important factors set forth at 20 C.F.R. §§ 404.1520c(c)(3)&(4) & 416c(c)(3)&(4)" regarding the author's relationship with the claimant and specialization. Dkt. No. 11 at 17. Specifically, plaintiff asserts that the ALJ "did not give sufficient weight" to Dr. Halloran, who "set forth many exertional and non-exertional limitations caused by [plaintiff's] anxiety, depression, headaches, and fibromyalgia. These limitations, including, but not limited to missing more than four days a month o[f] work, would prevent any employment." Id. at 20. Further, plaintiff contends that "[t]he ALJ failed to give sufficient weight to the findings and opinions of treating neurologists [Edward] Mazdzer[, M.D.,] and Dr. Penar. They objectively determined from the MRI that [plaintiff] suffered from Chiari's I malformation. They both determined that her recurring headaches and seizures were caused by this severe impairment." Id. Next, she avers that the ALJ "did not give sufficient weight to his own consulting physician Dr. Figueroa. Without evidence, [the ALJ] baldly stated that [plaintiff] did not have any flare-ups of fibromyalgia during the relevant period." Id. Plaintiff contends that this assertion "is belied by the medical records. Her fibromyalgia was diagnosed by treating physician, Dr. Halloran. The notes from neurologist Dr. Penar also indicate that the fibromyalgia was diagnosed by a rheumatologist." Id. Finally, plaintiff contends that "the ALJ failed to give sufficient weight to the opinions of his own consulting psychologist, Dr. Hartman. After an examination, Dr. Hartman concluded that [plaintiff] has moderate difficulty

sustaining an ordinary routine.  She has moderate to marked difficulty using reason and judgment.  She has moderate to marked difficulty regulating her emotions."  Id. at 20-21.

Plaintiff does not appear to challenge the ALJ's consideration of the medical opinions as to the two most important factors—supportability and consistency—but only the "consideration [of] the other important factors[.]"  Dkt. No. 11 at 16-21.  However, she also asserts that the ALJ afforded insufficient "weight" to various medical opinions— a standard which is not used for analyzing plaintiff's claim as it was filed after March 27, 2017.  Id. at 20; see Hilton v. Kijakazi, No. 20-CV-9318 (RWL), 2022 WL 1451476, at *3 (S.D.N.Y. May 9, 2022) ("For claims filed prior to March 27, 2017, if the ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ must determine how much weight, if any, to give that opinion.").  Accordingly, based on plaintiff's arguments and the relevant regulations, the Court will review the ALJ's decision for legal error regarding the "other most persuasive factors" and for substantial evidence.  Dkt. No. 11 at 16-21.

As to the "other most persuasive factors[,]" an ALJ's duty to articulate consideration of them is triggered when he or she "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same[.]"  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).  "Given the relative novelty of the regulations, there is a dearth of caselaw interpreting what triggers the ALJ's responsibility to discuss the 'other most persuasive factors[.]'"  Elizabeth P. v. Comm'r of Soc. Sec., No. 3:20-CV-891 (CFH), 2022 WL 507367, at *14 (N.D.N.Y. Feb. 18, 2022) (quoting 20 C.F.R. §

23

404.1520c(b)(3)) (alteration in original).  However, when looking to the regulations and guidance from the SSA, it appears that the ALJ is "required to discuss the remaining factors [if] he or she [] find[s] that two medical opinions: (1) address the same issue; (2) are both well-supported (meaning that a finding that two opinions are unpersuasive would not trigger this requirement); (3) are both consistent with the record; and (4) the opined limitations or conclusions are not identical."  Id. (citations omitted).

Here, there are two medical opinions that trigger this requirement.  The ALJ found the state agency consultants' opinions, who reviewed plaintiff's claims related to her mental limitations to be "persuasive."  T. at 21.  The ALJ found the opinions of Drs. Momot-Baker and Walker to be "well supported" and "consistent with the objective medical evidence."  Id.  The determinations come to nearly identical limitations with the exception of Dr. Momot-Baker finding plaintiff to be moderately limited in her ability to set realistic goals or make plans independently of others and Dr. Walker finding "[n]o evidence of limitation in this category."  Id. at 125; 97.[9]  Further, Dr. Momot-Baker ultimately concluded that "[d]espite limitations, [plaintiff] has the mental residual capacity to understand, remember, and carry out detailed work procedures with an adequate level of persistence and pace."  Id. at 97.  Dr. Momot-Baker explained that plaintiff "may have some problems with intense and prolonged social interactions but is capable of

---

[9] Drs. Momot-Baker and Walker came to identical step three conclusions, finding that plaintiff had mild limitations in understanding, remembering, or applying information, and moderate limitations in interacting with others, concentrating, persisting, and maintaining pace, and adapting or managing oneself.  See T. at 104, 119.  However, their step four, "MFRC" assessments are not identical, which is the relevant portion of the determinations for this analysis.  See id. at 108-10, 123-26; see also Chappell v. Comm'r of Soc. Sec., No. 1:18-CV-01384 (EAW), 2020 WL 1921222, at *6 (W.D.N.Y. Apr. 21, 2020) (citation omitted) ("While the analysis at steps two and three concerns the functional effects of mental impairments, the RFC analysis at step four specifically considers work-related physical and mental activities in a work setting.  As a result, a finding at steps two or three does not automatically translate to an identical finding at step four.").

relating to others in regular work interactions.  [Plaintiff] would have difficulties in high stress and demand work situations, but can adapt to changes in a routine work setting and can use appropriate judgment to make work-related decisions." Id.

Dr. Walker ultimately came to a similar but not identical conclusion, stating that plaintiff "retain[ed] capacity to understand, remember, and carry out detailed work procedures"; she "may experience some distractibility but is capable of maintaining adequate attention to completed work related tasks on an ongoing basis and can sustain a normal work day and work week"; she "may have some problems with intense and prolonged social interactions but will be capable of engaging in superficial work interactions with supervisors, coworkers and the general public"; and she "may have difficulty handling high stress or high demand work situations, but can adapt to changes in a routine work setting and can use appropriate judgment to make work-related decisions." T. at 126.  Although the differences are extremely minor, they are not the exact same opinions and would therefore trigger the ALJ's duty to discuss the "other most persuasive factors." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (requiring that the ALJ must articulate consideration of the other factors when two opinions are, among other things, "not exactly the same[.]").  The ALJ met this requirement by explaining that "[a]lthough non-examining, these experts are well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act and Regulations." Id. at 21.  As such, the ALJ met his duty to articulate their examining relationship and specialization.

The ALJ also found the opinions of Drs. Rosenthal and Powell, who conducted plaintiff's initial and reconsideration determinations related to her physical limitations, to

be "persuasive."  T. at 20.  She explained that the opinions were "well supported" and "consistent with the objective medical evidence."  Id.  Although the opinions relate to the same issue—plaintiff's physical impairments—and were found to be equally well-supported and consistent with the record, they come to identical conclusions.  See id. at 93-95, 121-23.  Therefore, the ALJ was not required to explicitly discuss the "other most persuasive factors" in explaining how persuasive she found the opinions.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).  It is worth noting that although the opined limitations and conclusions are identical, Dr. Powell's determination contains slightly more information as he conducted his review on reconsideration and, therefore, had more medical evidence to discuss.  See T. at 123.  Dr. Powell included the new evidence in the "additional explanation" section of the determination.  Id. at 123.  The regulations do not define what is means for two or more opinions be "not exactly the same" but the Court interprets this to relate to the author's ultimate conclusions or opined limitations.  See Evaluating opinion evidence in claims filed on or after March 27, 2017, 3 Soc. Sec. Disab. Claims Prac. & Proc. § 25:13 (2nd ed.) (emphasis added) ("SSA takes the position that the ALJs are required to discuss relative persuasiveness of the medical opinions in terms of the treatment/examining relationship, specialization, and other factors only where contrary medical opinions are equally persuasive in terms of both supportability and consistency."); 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .").  As Dr. Powell's and Dr. Rosenthal's conclusions about what plaintiff could do despite her impairments was the same, the ALJ was not required

to discuss the other factors.  See 20 C.F.R. §§ 404.1513(a)(2), 404.1520c(b)(3), 416.913(a)(2), 416.920c(b)(3).  Nevertheless, the ALJ discussed the consultants' examining relationship and specialization by stating, "[a]lthough non-examining, these experts are well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act and Regulations."  T. at 20; see Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5858 (SSA Jan. 18, 2017) ("Because the content of evidence, including medical opinions . . ., varies with each unique claim, it would not be appropriate to set out a detailed rule for when this situation may occur.  We expect that each adjudicator will use his or her discretion to determine when this situation occurs.").

As to Drs. Halloran, Hartman, and Figueroa, the ALJ was not required to articulate consideration of the "other most persuasive factors" because he found their opinions to be partially persuasive or not persuasive.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3); see T. at 20-21; see also M.-M., v. Kijakazi, No. 5:21-CV-14, 2022 WL 1223202, at *12-13 (D. Vt. Apr. 26, 2022) ("The court further clarifies that the ALJ is under no obligation to consider factors other than supportability and consistency in evaluating medical opinions—such as the length of the treating relationship and frequency of examinations—except where two or more medical opinions are equally persuasive on the same issue.  Thus the ALJ did not err in failing to discuss the relationship with the claimant in his analysis of [the plaintiff's treating provider's] opinion[]" where the ALJ found the opinion to be "less than fully persuasive.").

To the extent plaintiff raises an issue regarding Drs. Mazdzer and Penar, there are no medical opinions in the record from either provider.  See Dkt. No. 11 at 20; Dkt.

No. 15 at 15; see T. at 895-902; see also 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . ."). Moreover, although Drs. Mazdzer and Penar noted plaintiff's Chiari's I Malformation, fibromyalgia and migraines, diagnoses are insufficient to mandate greater RFC limitations. See T. at 357-58; 895-902; see also Colbert v. Comm'r of Soc. Sec., 313 F. Supp. 3d 562, 581 (S.D.N.Y. 2018) (collecting cases) ("A mere diagnosis . . . does not necessarily support a finding of limitations in a claimant's RFC."). Accordingly, the Court finds no legal error in the ALJ's consideration of the medical opinions of record.

Although there is no legal error in the ALJ's review of the medical opinions, the ALJ's decision must also be based on substantial evidence. See Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009) ("In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard.").

To the extent plaintiff challenges the ALJ's consideration of the Dr. Figueroa's physical consultative examination, the Court finds no error. See Dkt. No. 11 at 20. The ALJ appropriately considered the supportability of the opinion, noting that the findings were supported only by the subjective complaints that plaintiff gave during the examination but not the objective findings which were mostly normal aside from ten out of nineteen tender points. See T. at 20, 743-46. Further, the ALJ appropriately addressed the consistency, noting that although Dr. Figueroa stated that plaintiff "may have difficulty with activities of moderate exertion during fibromyalgia flare-ups[,]" there

were no noted flare-ups in the record during the relevant time period.  Id. at 746; 20.

Plaintiff does not provide evidence contradicting these findings but only summarily

states that it is "belied by the record."  Dkt. No. 11 at 20.  Such an argument is

insufficient to warrant remand.

Next, although the ALJ was not required to articulate his consideration of the

other factors relating to Dr. Halloran because the ALJ did not find the opinion to be

equally persuasive with any other opinion, "courts applying the new regulations have

explained that 'the essence of the [treating physician rule] remains the same.'"  Balz v.

Kijakazi, No. 20-CV-7729 (KMK/PED), 2022 WL 1058497, at *4 (S.D.N.Y. Mar. 30,

2022) (alteration in original) (quoting Acosta Cuevas v. Comm'r of Soc. Sec., No. 20-

CV-502, 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021)).  Accordingly, "ALJs still must

consider the fact that '[b]ecause a treating source examines a claimant directly, they

may have a better understanding of a claimant's impairment(s)'"; "'the new regulations

cannot be read as a blank check giving ALJs permission to rely solely on agency

consultants while dismissing treating physicians in a conclusory manner[.]'"  Id. (quoting

Soto v. Comm'r of Soc. Sec., No. 14-CV-4631, 2020 WL 5820566, at *4 (E.D.N.Y. Sept.

30, 2020); Amber H. v. Saul, No. 20-CV-490, 2021 WL 2076219, at *5 (N.D.N.Y. May

24, 2021)).

When referencing Dr. Halloran's treatment notes throughout the decision, the

ALJ stated that for certain visits, plaintiff "saw her primary care provider[.]"  T. at 19-20.

When discussing Dr. Halloran's mental health opinions, the ALJ stated that "Dr.

Halloran is a primary care provider, not a specialist."  Id. at 21.  It is, therefore, evident

that the ALJ was aware of, and considered, the relationship between plaintiff and Dr.

Halloran as she referenced it numerous times and noted that Dr. Halloran was not a specialist.  See id. at 19-21.

As for the physical-limitations opinion, the ALJ found the opinion to be partially persuasive.  See id. at 20-21.  Dr. Halloran noted that plaintiff's diagnoses were "fibromyalgia, opio[i]d addiction, Benzo addiction."  Id. at 916.  Although the opinion referenced plaintiff's tender points and pain, Dr. Halloran stated that the clinical findings and objective signs were "severe anxiety and panic attacks" and "substance use disorder."  Id.  Further, she identified "anxiety" and "addiction" as physiological conditions affecting physical conditions.  Id. at 917.  She noted that plaintiff would be incapable of low stress work because of her "severe anxiety."  Id. at 919.  In describing "any other limitations . . . that would affect" plaintiff's ability to work, Dr. Halloran wrote, "severe anxiety, panic attacks" and in explaining the "earliest date that the description of symptoms and limitation in th[e] questionnaire applies," Dr. Halloran stated, "October 2014 – [] provider documents anxiety and substance abuse.  I have only been seeing patient since 5/2019."  Id. at 920.  Therefore, contrary to plaintiff's contention that "Dr. Halloran did *not* attribute [plaintiff's] limitations to her past substance abuse," Dkt. No. 11 at 20, there is no misstatement or misreading of the opinion where the ALJ explained that "th[e] opinion is supported by a few noted findings, such as tender points, but it was also heavily reliant on [plaintiff's] substance abuse."  Id. at 20.  Further, Dr. Halloran's treatment notes, as stated by the ALJ, do not reflect physical limitations stemming from plaintiff's physical impairments but "most noted treatment for substance abuse[.]"  Id. at 20, 837-51, 861-68, 874-76.  Plaintiff does not otherwise identify any treatment records from Dr. Halloran which provide functional limitations resulting from plaintiff's physical

impairments that the ALJ did not consider or address.  See Dkt. No. 11 at 10-21.  The Court therefore finds the ALJ's consideration of Dr. Halloran's physical limitations opinion to be supported by substantial evidence.

The ALJ's step-four determination relating to plaintiff's mental limitations is also supported by substantial evidence and, in the alternative, any error is harmless.  See Jackson v. Kijakazi, No. 20-CV-7476 (JLC), 2022 WL 620046, at *9 (S.D.N.Y. Mar. 3, 2022) (citation omitted) ("The substantial evidence standard is a 'very deferential standard of review.'").  As part of her arguments relating to the ALJ's  Listings determination, plaintiff argues that "the RFC did not correctly include her moderate limitation in sustaining an ordinary routine and moderate to marked limitation in regulating her emotions."  Dkt. No. 11 at 26.  This is more appropriately addressed here, rather than in the Court's review of the ALJ's step-three determination.

The ALJ discounted the consultative examiner, Dr. Hartman's, moderate to marked limitations regulating plaintiff's emotions because "[t]here was little to support moderate to marked limitations in any area."  T. at 21.  However, during the consultative examination, Dr. Hartman noted that plaintiff's affect was anxious.  See id. at 739.  Dr. Halloran's treatment notes indicate that plaintiff sometimes appeared anxious or depressed but did not otherwise indicate functional limitations stemming from her impairments.  See id. at 715, 719, 724, 728, 838-51, 863, 867, 876.  Moreover, in her medical source statement, Dr. Halloran checked the boxes indicating that plaintiff was seriously limited in her ability to deal with normal work stress and to deal with stress of semi-skilled or skilled work.  See id. at 912-13.  Dr. Halloran also handwrote on her opinion, three separate times, that plaintiff was "extremely anxious" when she was "in

public and work environments[,]" "when there are expectations and judgment[,]" and when she was "in unknown areas and with strangers." Id. at 912-13.  Dr. Halloran concluded that plaintiff would have moderate limitations in managing herself in the workplace.  See id. at 914.  The ALJ did not explicitly reconcile these findings and notations with Dr. Hartman's conclusion that plaintiff was moderately to markedly limited in her ability to regulate her emotions, but rather summarily concluded that the record did not support such limitations.  See id. at 21; but see Tamara M. v. Saul, No. 3:19-CV-1138 (CFH), 2021 WL 1198359, at *10 (N.D.N.Y. Mar. 30, 2021) ("That [two medical sources] reached similar but conclusory findings does not entitle either of them to greater weight – their consistency with each other does not equate to consistency with the overall medical treatment notes or the other well-supported medical opinions.").  Further, as to Dr. Hartman's conclusion that plaintiff had "moderate to marked difficulty using reason and judgment," the ALJ stated that the consultative examination "noted few findings except for an anxious mood."  Id.  Those "few findings" were that plaintiff's insight and judgment were "[f]air to poor."  Id. at 740.  The ALJ did not explain how fair-to-poor insight and judgment do not support moderate to marked limitations in using reason and judgment.

Nevertheless, even if there is evidence supporting the plaintiff's arguments, the question is whether there is substantial evidence supporting the ALJ's conclusion.  See Selian v. Astrue, 708 F.3d 409, 417 (2d Cir.2013) ("If there is substantial evidence to support the [agency's] determination, it must be upheld.").  The ALJ explained that Dr. Halloran's and Dr. Hartman's opinions to the extent they found "moderate to marked" or "fairly extreme" limitations were unsupported by the record which showed fairly normal

examinations aside from an anxious and depressed mood.  T. at 21-22.  The ALJ also cited to examinations in the record which "were generally unremarkable" but evidenced a depressed or anxious appearance.  Id. at 21.  Further, during the consultative examination plaintiff was cooperative and pleasant, her speech was clear and fluid, her thought process coherent and equal, she was alert and oriented, her attention, concentration, and recent and remote memory were intact and she had a "nearly average general fund of information."  Id. at 739-40.

The ALJ is not required to mention every piece of evidence he relies on, and he is the arbiter of conflicts in the record, but there must be sufficient explanation for the Court to glean the rationale.  See Crumedy v. Comm'r of Soc. Sec., No. 16-CV-1261 (GTS), 2017 WL 4480184, at *5 (N.D.N.Y. Oct. 6, 2017) ("[T]here is no requirement that the ALJ accept every limitation in an opinion where portions of that opinion are not supported by the evidence."); Lianna M. D. v. Kijakazi, No. 8:20-CV-0615 (LEK), 2021 WL 4150102, at *7 (N.D.N.Y. Sept. 13, 2021) (citing Gough v. Saul, 799 F. App'x 12, 15 (2d Cir. 2020) (summary order)) ("It is within the province of the ALJ to resolve conflicts in the medical evidence so long as the ALJ explains how the evidence conflicts and how they resolve the conflict.").  The ALJ expressly reiterated the moderate to marked limitations found by both Drs. Halloran and Hartman and concluded that the record did not support more than mild or moderate limitations.  See T. at 16, 21.  The relatively normal examinations provide substantial evidence for this conclusion.

The Court notes that the ALJ found Dr. Hartman's and Dr. Halloran's entire opinions to be "unpersuasive" because "[t]here was little to support moderate to marked limitations in any area" and the opinion was "fairly extreme, and significant findings

would be expected[,]" respectively.  T. at 21.  Yet, in understanding, remembering, and applying information, all four of the relevant opinions found either no limitation in this area or mild limitations.  See id. at 104, 119, 740, 914.  Dr. Hartman, like the state agency consultants, also found that plaintiff had a moderate limitation in interacting with others and in managing herself.  See id. at 104, 119, 914.  The ALJ did not explain why Dr. Hartman's and Dr. Halloran's opinions were entirely unpersuasive when they opined similar, if not identical conclusions in some of the relevant categories, as the state agency consultants' and each other.  See id. at 21.

It would have been prudent for the ALJ to break down the opinions by each of their limitations and acknowledge that not all of Dr. Hartman's and Dr. Halloran's determinations were "fairly extreme"; rather, many of them were mild to moderate and similar to each other and the state agency consultants' opinions.  T. at 21.  However, the ALJ made it clear that the treatment record did not support more than moderate limitations in any functional area, and aside from Dr. Hartman's and Dr. Halloran's opinions, plaintiff does not identify records indicating otherwise.  See T. at 16, 21, 716, 719-20, 724, 728, 838-51, 863, 867, 876; see also Brault, 683 F.3d at 448 (quotation marks and citation omitted) ("An ALJ does not have to state on the record every reason justifying a decision," nor is an ALJ "required to discuss every piece of evidence submitted.").

Further, this lack of more specific explanation constitutes harmless error where had the ALJ afforded Dr. Halloran's and Dr. Hartman's opinions more deference, and found them to be at least partially persuasive regarding the mild or moderate limitations, the RFC would not have changed as the ALJ ultimately concluded that mild to moderate

limitations were appropriate.  See Linda S. v. Comm'r of Soc. Sec., No. 5:18-CV-726

(ATB), 2019 WL 3387993, at *7 (N.D.N.Y. July 26, 2019) (footnote omitted) ("Even if the

ALJ erred in failing to include 'moderate' reaching limitations, and as such, failed to

provide a proper function-by-function analysis, this would have been harmless error

because it would not have changed the outcome of this case.").  In fact, had the ALJ

adopted Dr. Halloran's less-extreme limitations, plaintiff would either not be limited, or

be only mildly limited in her ability to understand, remember, and apply information.

See T. at 914.  The ALJ's conclusion that plaintiff was moderately limited in his area

was more favorable to plaintiff.  See id. at 16; cf. Julie A. v. Comm'r of Soc. Sec., No.

8:20-CV-1237 (ATB), 2022 WL 813901, at *15 (N.D.N.Y. Mar. 17, 2022) ("An RFC

finding that is more favorable to the plaintiff than the record may support is not, in itself,

cause for remand.").  As the Court can glean the ALJ's rationale in not adopting the

marked limitations opined by Drs. Hartman and Halloran, the mild to moderate

limitations are supported by substantial evidence, and explicit adoption of Dr. Hartman's

and Dr. Halloran's less-extreme limitations would not change the RFC, remand is not

warranted on this ground.  Cf. Andrew B. v. Comm'r of Soc. Sec., No. 1:20-CV-1591

(WBC), 2022 WL 1423257, at *5 (W.D.N.Y. May 5, 2022) ("[T]he ALJ's failure to assess

[the consultative examiner's] reaching limitation is problematic.  The ALJ's reasoning for

the omission of a reaching limitation cannot be gleaned from the record, [the] opinion is

more restrictive than the RFC, and had the reaching limitation been credited, it could

have changed the outcome of [the p]laintiff's claim.").

## B. Listings Determination

"'[T]he ALJ must consider all relevant evidence in [the] case record' in determining whether a listing has been met or equaled under step three." Brittany F. v. Comm'r of Soc. Sec. Admin., No. 1:18-CV-1365 (ATB), 2020 WL 838076, at *4 (N.D.N.Y. Feb. 19, 2020) (quoting Graf v. Berryhill, No. 3:18-CV-93, 2019 WL 1237105, at *4 (D. Conn. Mar. 18, 2019)). "Additionally, the ALJ is required to articulate the specific reasons justifying his decision that the claimant does or does not meet the relevant listing." Graf, 2019 WL 1237105, at *4. "It is well settled that '[w]here the claimant's symptoms as described by medical evidence appear to match those described in the Listings, the ALJ must explain a finding of ineligibility based on the Listings.'" Brittany F., 2020 WL 838076, at *4 (quoting Kovacevic v. Chater, No. 94-CV-600, 1995 WL 866425, at *8 (W.D.N.Y. Sept. 28, 1995)) (additional citations omitted). If "the ALJ failed to adequately 'address or explain why he rejected substantial conflicting record evidence [at step three],'" he will have committed legal error. Id. at *5 (quoting Cepeda v. Berryhill, No. 18-CV-7304, 2019 WL 7483937, at *14 (S.D.N.Y. Dec. 12, 2019), report and recommendation adopted, 2020 WL 58236 (S.D.N.Y. Jan 6, 2020)).

"Plaintiff has the burden of proof at step three to show that [his or] her impairments meet or medically equal a Listing." Rockwood v. Astrue, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (citing Naegele v. Barnhart, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)). "To meet a Listing, [the p]laintiff must show that [his or] her medically determinable impairment satisfies all of the specified criteria in a Listing." Id. "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." Id. (quoting Sullivan v. Zebley, 493 U.S. 521, 530

(1990)).  "Additionally, a court may uphold an ALJ's finding that a claimant does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence."  Andrea K. v. Comm'r of Soc. Sec., No. 1:18-CV-1448 (CFH), 2021 WL 1224049, at *6 (N.D.N.Y. Mar. 31, 2021) (citations omitted).

### 1.  ALJ Decision

The ALJ determined that plaintiff's mental impairments did not meet Listing 12.06.  See T. at 15.  The ALJ explained that as to "understanding, remembering, or applying information, [plaintiff] has a moderate limitation."  Id. at 16.  The ALJ stated that plaintiff "alleged memory problems, but she could follow spoken and written instructions" and that "[i]n her consultative psychological examination in October 2019, [plaintiff's] thought processes were coherent and goal-directed.  Memory was intact, as she recalled four of four objects both immediately and after five minutes.  She also recalled six digits forward and four backward."  Id. (citing T. at 298-308, 739-40).  The ALJ also noted that "[e]xaminations of record did not reveal any particular problems in this area." Id. (citing T. at 695, 714-16, 722-25, 739-40, 846, 848-50, 863, 873-76).  As such, the ALJ concluded that "[t]he evidence does not support more than moderate limitation in this area."  Id.

Next, in interacting with others, the ALJ determined that plaintiff had a moderate limitation.  See T. at 16.  The ALJ explained that plaintiff "reported she did not have problems getting along with others, including bosses or people in authority.  She spent time with family and had a couple friends she talked to on the phone. She was able to go to counseling groups and to her kids' school events."  Id.  The ALJ noted that plaintiff

"could drive and go out alone, and she could shop in stores.  She testified she had
anxiety attacks, which could be debilitating. She was easily irritated in crowds."  Id.
(citing T. at 298-308).  The ALJ explained that in plaintiff's "consultative psychological
examination in October 2019, [she] had an anxious mood and affect, but she was
cooperative and pleasant.  Examinations of record did not reveal any particular
problems in this area.  The evidence does not support more than moderate limitation in
this area."  Id. (citing T. at 695, 714-16, 722-24; 739-40, 846, 848-50, 863, 873-76).

As to concentrating, persisting, and maintaining pace, the ALJ concluded that
plaintiff had a mild limitation.  See T. at 16.  The ALJ stated that plaintiff "alleged having
problems paying attention, with her mind constantly worrying about things.  She only
sometimes finished what she started.  She could follow spoken and written instructions."
Id. (citing T. at 298-308).  The ALJ explained that "[i]n her consultative psychological
examination in October 2019, her attention and concentration were intact, as she could
do counting, simple calculations, and serial sevens with minimal difficulty.  Examinations
of record did not reveal any particular problems in this area.  The evidence does not
support more than mild limitation in this area."  Id. (citing at 695, 714-16, 722-24; 739-
40, 846, 848-50, 863, 873-76).

Finally, as to adapting and managing herself, the ALJ stated that plaintiff had "a
moderate limitation.  She reported she was able to care for her personal hygiene,
although at times she let herself go.  She cared for her kids and cooked for her husband
when she could.  She could sometimes do household chores, but sometimes her
physical impairments prevented her doing them."  T. at 16 (citing T. at 298-308).  The
ALJ explained that "[i]n her consultative psychological examination in October 2019,

[plaintiff] was dressed in a casual and well-groomed manner.  She reported she was able to dress, bathe, and groom herself, and she could do her own cooking, cleaning, and laundry.  Examinations of record did not reveal any particular problems in this area." Id. (citing T. at 695, 714-16, 722-24, 739-40, 846, 848-50, 863, 873-76).  As such, the ALJ concluded that "[t]he evidence does not support more than moderate limitation in this area." Id.

### 2. Analysis

Plaintiff asserts that "[b]ased on the well-supported findings and opinions of treating primary care physician Dr. Halloran, [plaintiff] is disabled by her anxiety pursuant to Listing 12.06." Dkt. No. 11 at 24.  Plaintiff also contends that the psychological consultative examiner found that plaintiff had moderate to marked limitations and that "[t]he ALJ did not explain how a person with moderate limitations in sustaining an ordinary routine and moderate to marked limitations in controlling their emotions could perform unskilled work on a full-time sustained basis." Id. at 25.

The ALJ did not acknowledge conflicting probative evidence of plaintiff's more severe mental limitations at step three.  See T. at 16.  As to concentrating, persisting, and maintaining pace, the state agency consultants determined that plaintiff had a moderate limitation.  See id. at 104, 119.  Dr. Hartman concluded that plaintiff had moderate to marked limitations using reason and judgment and regulating her emotions. See id. at 740.  Dr. Halloran opined that plaintiff had marked limitations in interacting with others and adapting in the workplace.  See id. at 914.  The ALJ's failure to acknowledge this evidence at step three before ultimately concluding that plaintiff had only mild limitations in concentrating and persisting and moderate limitations in the other

three categories is error.  See Sheenalee D. v. Comm'r of Soc. Sec., No. 8:19-CV-140 (TJM/ATB), 2020 WL 1034396, at *5 (N.D.N.Y. Feb. 3, 2020), report and recommendation adopted, 2020 WL 1030652 (N.D.N.Y. Mar. 3, 2020) ("A full review of the medical record reveals evidence suggesting plaintiff may have suffered a marked limitation in one or more of the paragraph (B) criteria.  Thus, further clarification as to why plaintiff's symptoms do or do not meet the listing requirements is necessary, because the ALJ did not discuss how he considered the various medical records and opinions suggesting that plaintiff suffered marked limitations.").

Notwithstanding, "[a]n ALJ's [step three determination based on a deficient analysis] may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence."  Ryan v. Astrue, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (citation omitted).  Here, at step four, the ALJ appropriately acknowledged Dr. Halloran's and Dr. Hartman's marked limitations and explained that he did not find them persuasive given the relatively normal examinations in the record.  See T. at 21-22.  As explained, this decision is supported by substantial evidence where the record supports the ALJ's conclusion of no more than moderate limitations in plaintiff's mental health functioning.  See supra at 31-35.  As such, the ALJ did not err in excluding Dr. Halloran's and Dr. Hartman's marked limitations from plaintiff's RFC.

Moreover, the ALJ acknowledged at step four that the state agency consultants determined that plaintiff had a moderate limitation in maintaining attention and concentration.  See T. at 104, 119.  At no point in his decision, though, does the ALJ explain why he concluded at step three that plaintiff only had a mild limitation in

concentrating and persisting despite the state agency consultants determining that plaintiff had a moderate limitation in the category, and Dr. Hartman concluding that plaintiff had moderate difficulty sustaining an ordinary routine.  See T. at 16, 21, 104, 119, 740.[10]

However, the failure to adopt the state agency consultant's moderate limitations in concentration and persistence—despite finding their opinions to be persuasive—is harmless error.  First, were the ALJ to incorporate the state agency consultants' determinations in full and determine that plaintiff had moderate limitations in concentrating and persisting, plaintiff still would not meet the Listing.  See Gabriel C. v. Comm'r of Soc. Sec., No. 6:18-CV-671 (ATB), 2019 WL 4466983, at *4 (N.D.N.Y. Sept. 18, 2019) ("[P]aragraph B requires extreme limitation of one area or a marked limitation of two areas of mental functioning, which include (1) understanding, remembering or applying information, (2) interacting with others, (3) concentrating, persisting or maintaining pace, and (4) adapting or managing oneself. ").  Second, the ALJ's RFC and/or the jobs identified by the vocational expert ("VE") sufficiently account for mild to moderate limitations in plaintiff's ability to concentrate and persist.  See T. at 17.  Courts have explained that "limit[ing a p]laintiff to performing only 'work that requires sufficient attention and concentration to understand, remember and follow simple instructions[]' . . . is fully consistent with the observation that [the p]laintiff has moderate limitations in concentration, persistence, and pace." Coleman v. Comm'r of Soc. Sec., 335 F. Supp. 3d 389, 401 (W.D.N.Y. 2018) (citations omitted); see Rivas v. Berryhill, No. 1:17-CV-

---

[10] To the extent the parties do not explicitly raise this issue, the Court finds it appropriate to address as it is relevant to a determination of whether the ALJ's RFC appropriately accounted for plaintiff's limitations and whether the decision is ultimately supported by substantial evidence.

05143 (ALC), 2018 WL 4666076, at *15 (S.D.N.Y. Sept. 27, 2018) ("The Second Circuit has repeatedly held that 'moderate' limitations [in concentration, persistence, and pace] do not preclude an individual's ability to perform unskilled work.") (collecting cases).

The ALJ limited plaintiff to "understand[ing], remember[ing], and apply[ing] simple and some complex instructions and directions[,]" to using "reason and/or judgment to make simple non-complex work-related decisions[,]" and to only occasionally interacting with coworkers and the public but frequently interacting with supervisors.  T. at 17.  The ALJ also limited plaintiff to "tasks at a SVP level of approximately 1, 2, or 3."  Id.; see Palermo v. Colvin, No. 1:15-CV-1024 (GTS), 2016 WL 6833990, at *4 (N.D.N.Y. Nov. 18, 2016) (citing SSR 00-4P, 2000 WL 189870, at *3 (Dec. 4, 2000); 20 C.F.R. §§ 404.1568, 416.968)) ("Under the regulations, unskilled work corresponds to an SVP level of one or two; and semi-skilled work corresponds to an SVP level of three or four.").

Although the ALJ limited plaintiff to simple, non-complex work with only occasional interaction with coworkers and the public, the ALJ also stated that plaintiff could perform "some complex" work or jobs at SVP level 3 which is semi-skilled.  T. at 17.  Therefore, it appears that the ALJ accounted for mild to moderate limitations in attention and concentration.  See id.  To the extent "some complex" work and SVP 3 do not appropriately accommodate the limitations, this too is harmless.

> An ALJ's failure to incorporate mental limitations into an RFC otherwise supported by substantial evidence is harmless error where "(1) medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite' those limitations, and "the challenged hypothetical is limited to include only unskilled work;" or (2) the hypothetical "otherwise implicitly account[ed] for a claimant's" mental limitations.

Brogdon v. Berryhill, No. 17-CV-7078 (BCM), 2019 WL 1510459, at *14 (S.D.N.Y. Mar. 22, 2019) (quoting McIntyre v. Colvin, 758 F.3d 146, 152 (2d Cir. 2014). Each provider and consultant determined that plaintiff could engage in simple work. See T. at 110, 126, 740, 912, 914. Further, during the hearing, the VE testified that there were three jobs available in the national economy to a hypothetical plaintiff with the relevant RFC: "office helper is DOT #239.567-010, SVP 2, light, 35,076"; "garment sorter, DOT #222.687-014, SVP 2, unskilled, light, 17,698"; and "laundry worker, 302.685-010, SVP 2, light, 30,890." Id. at 80-81. Therefore, all three jobs that the VE identified were unskilled. See Brogdon, 2019 WL 1510459, at *14 (citing Akey v. Astrue, 467 F. App'x 15, 17 (2d Cir. 2012) (summary order) ("The ALJ's failure to include the limitation to unskilled and semi-skilled work is harmless because the only jobs the vocational expert identified were unskilled or semi-skilled."); Sanchez v. Berryhill, 336 F. Supp. 3d 174, 179 (W.D.N.Y. 2018) (finding an ALJ's error in failing to limit plaintiff to unskilled work harmless where "[t]he four jobs identified by the vocational expert [were] all unskilled positions, which can be performed by individuals with moderate mental deficiencies")).

"Moreover, the RFC's provision that plaintiff could 'understand, remember, and carry out simple work-related tasks, with only occasional contact with the public, co-workers, or supervisors' implicitly accounted for plaintiff's mental limitations." Brogdon, 2019 WL 1510459, at *14. Of note, the ALJ limited plaintiff to occasional contact with only coworkers and the public but frequent contact with supervisors. See T. at 17. However, plaintiff's representative asked the VE whether limiting plaintiff to only occasional interaction with supervisors would "make any different to any of the jobs [] identified or [plaintiff's] past work[]." Id. at 83. The VE testified that "it wouldn't[.]" Id.;

see Mosley v. Comm'r of Soc. Sec., No. 17-CV-6800 (CJS), 2019 WL 2491664, at *5 (W.D.N.Y. June 14, 2019) (finding harmless error where "at the hearing, the VE testified that such [additional] postural limitations would not affect the hypothetical claimant's ability to perform the jobs she identified.").  Accordingly, any error in the ALJ's step three analysis for failing to include the state agency consultants' moderate limitations in concentrating and persisting and to subsequently limiting plaintiff to only unskilled work with occasional interaction with supervisors is harmless.  As such, remand is not warranted on this ground.

## VI. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that the Commissioner's cross-motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**, and plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 26, 2022
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

44